Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP**
280 S. Beverly Drive, Penthouse
Los Angeles, CA 90212
T: 917-471-1894
astraus@milberg.com

*Attorneys for Plaintiffs and Putative Classes*
*Other Counsel on Signature Page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## (SOUTHERN DIVISION)

| | |
|---|---|
| JACQUELINE SIMMONS, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br>v.<br><br>TRISTAR PRODUCTS, INC.,<br><br>                        Defendant. | CASE NO. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jacqueline Simmons ("Plaintiff"), on behalf of herself and all others similarly situated, through her undersigned counsel, bring this Class Action Complaint ("Complaint") against Defendant Tristar Products, Inc. ("Tristar" or "Defendant"). The following allegations are based upon investigation by Plaintiff's counsel and upon personal knowledge as to Plaintiff's own facts.

## NATURE OF THE ACTION

1.    Tristar designs, manufacturers, markets, and sells a wide range of consumer products from garden hoses to cooking appliances, including the dangerously defective air fryers that are the subject of this litigation, touting itself as "industry recognized as the premier direct response market leader worldwide. Tristar has exceeded over one billion dollars in retail sales. Tristar Products, Inc. is an Inc. 5000 company."[1]  To that end, it claims to be a "mega marketer."[2]

2.    Tristar also represents that "[s]uperior innovation at affordable prices has enabled us to create #1 brands worldwide for more than 25 years. With over $1 billion in retail sales, our products solve everyday problems, helping to make life easier and more enjoyable for millions of consumers."[3]

---

[1] https://www.tristarproductsinc.com/who-we-are.php (Last accessed October 4, 2021).

[2] https://www.youtube.com/channel/UCXe3Ke_Ugmo0kts_XwiMKkg (Last accessed October 6, 2021).

[3] https://www.tristarproductsinc.com/ (Last accessed October 4, 2021).

3.      Tristar further promotes that its CEO, Keith Mirchandani, "has decades of experience introducing premium brands to consumers in over 100 countries in North America, Europe, South America, and Asia. Under his direction, Tristar has achieved industry leader status with over $1 billion in retail sales."[4]

4.      Many of Tristar's products include cookware and cooking appliances, including air fryers and combination ovens. Its claimed retail success has attracted celebrities to brand some of these products, including celebrity Chef Emeril Lagasse.

5.      Selling multiple Emeril branded appliances, Tristar advertises that a consumer can "[b]ring the expertise of award-winning chef Emeril Lagasse to your home cooking. Chef Emeril's collection of kitchen cookware and appliances is designed to exceed your expectations, making it easier to put quality, taste, and people before everything else."[5]

6.      Among this bevy of products are the Emeril Lagasse Power Airfryer 360 models, which include the 360, 360 XL, Deluxe, and Plus models ("Air Fryers").

7.      Despite Tristar's professed dedication to selling premium products that help "to make life easier" and are "designed to exceed [your] expectations," it designed, manufactured, marketed, distributed, and sold online or through third-

---

[4] https://www.tristarproductsinc.com/our-team.php (Last accessed October 4, 2021).

[5] https://www.tristarproductsinc.com/brand-emeril-everyday.php (Last accessed October 4, 2021).

party retailers the Air Fryers, which suffer from a serious and dangerous design and/or manufacturing defect.

8.      Specifically, during ordinary and routine operation, the Air Fryers become overheated due to improper circulation of air and fail to prevent drippings from coming into contact with the heating elements due to poor drip tray design ("the Defect").  The Defect is further exacerbated by the lack of an adequate, operational safety mechanism that would make the Air Fryers cycle or shut off and prevent overheating. As a result, the heating elements can overheat, catch fire, or smoke, causing damage to nearby kitchen components and posing a serious risk of personal injury to consumers.

9.      Each of the Air Fryers suffer from the uniform Defect, which, unknown to consumers but known to Tristar, exists at the point of purchase.  Thus, regardless of whether the Defect causes the Air Fryers to overheat, catch fire, or smoke, for all Air Fryers sold by Tristar, the Defect poses a serious safety risk to consumers and the public.

10.      Tristar has long known about the Defect, but has failed to disclose the Defect to consumers, instead waiting for consumers to complain that their Air Fryers overheat, catch fire, or smoke.  Plaintiff and consumers whose Air Fryers have experienced the Defect have repeatedly put Tristar on notice of the Defect, but Tristar has nevertheless continued to sell the Air Fryers to consumers, failed to warn consumers of the serious safety risk posed by the Defect, and failed to recall the

dangerously defective Air Fryers despite the risk of property damage and significant injuries to consumers as well as the failure of the product.

11.    As a direct and proximate result of Tristar's concealment of the Defect, failure to warn customers of the Defect and of the inherent safety risk posed by the Air Fryers, failure to remove the defective Air Fryers from the stream of commerce, and failure to recall or remedy the Defect, Plaintiff and Class Members purchased and used Tristar's defective and unsafe Air Fryers when they otherwise would not have made such purchases or would not have subsequently used the Air Fryers.

12.    Plaintiff's and all Class Members' Air Fryers contain the same Defect posing the same substantial safety risk to consumers and the public.  Tristar's Air Fryers cannot be used safely for their intended purpose of preparing meals at home.

13.    Unfortunately for consumers, the fact that a Tristar product is defective is not new. In fact, Tristar products have been subject to at least three different product recalls, including for safety reasons.[6] Yet, this has not prevented Tristar from continuing to distribute and sell the dangerously defective Air Fryers.

14.    Accordingly, the Air Fryers are now included in the long line of Tristar's poorly developed, designed, and manufactured products.

_____

[6] https://www.tristarcares.com/recall-information/ (Last accessed October 18, 2021); https://www.cpsc.gov/Recalls/2019/Tristar-Products-Recalls-Magnetic-Trivets-Due-to-Magnet-Ingestion-Hazard-Recall-Alert; https://www.cpsc.gov/Recalls/2016/tristar-products-recalls-aquarug-shower-rugs; https://www.cpsc.gov/Recalls/2002/cpsc-and-tristar-products-inc-announce-recall-of-steam-cleaner;  https://www.cpsc.gov/Recalls/2004/cpsc-tristar-products-inc-announce-recall-of-revised-design-steam-cleaner

**PARTIES**

15.     Plaintiff Jacqueline Simmons is a resident and citizen of California. In 2019, Ms. Simmons purchased a new Emeril Lagasse Power Air Fryer 360 for her home.

16.     Defendant Tristar Products, Inc. is a Florida corporation with its principal place of business located in Santa Rosa Beach, Florida.

17.     Tristar designs, manufacturers, markets, and sells the Air Fryers online and through third-party retailers throughout California and the United States.

**JURISDICTION**

18.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named and unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different States.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sales of products in this District and in California, and has engaged in the unlawful practices described in this Complaint in this District.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

21.     Air fryers are a relatively newer kitchen appliance, having been initially placed into the United States consumer market in 2010.[7]

22.     The purpose of the air fryer is to deliver healthy, fast meals by speeding the cooking process. Specifically, air fryer cooking is based "on a scientific principle called the Maillard effect, [where] hot air causes a chemical reaction that bonds amino acids. More specifically, this is the science behind delivering the one-of-a-kind taste and scent that makes fried foods so irresistible. An incredible feature to the Air Fryer is that it creates amazingly tasty meals with using little or no additional cooking oil."[8]

23.     The original air fryer technology "relies on using very hot air (392°F 200°C) to cook the food quickly. The air circulates throughout the compact cooking chamber at a high rate of speed. This process is known as rapid air technology."[9] As described below, the Air Fryers that are the subject of this litigation can reach

---

[7] https://foodnhealth.org/a-short-history-of-the-air-fryer/
[8] *Id.*
[9] *Id.*

dangerously high temperatures of up to 537°C (1000°F), which is several hundred degrees higher than the original air fryer technology.

24.    As shown in the diagram below, in all air fryers, heat is generally generated by several sets of heating elements, as well as a circular element. The rod-shaped elements are located at the top and bottom of the cooking cavity and are electrically operated as pairs.

25.    When the top elements are used, both are energized, and when the bottom elements are used, both are likewise energized. The circular element is located in a separate compartment on the right side of the unit and is assisted by a fan. The heating element and fan are always energized at the same time.

26.    The upper elements, lower elements, and circular element may be energized differently depending on what mode the oven is selected, such as air fryer or broil, among others. For example, while the rod-shaped elements generate radiant heat for other modes, the circular heating element is used in air fryer mode to generate hot air. Air fryer mode works by drawing air in from the cooking chamber with a fan. The air is heated as it passes over the heating element and heat exits through vents back into the cooking chamber.



27.    Like many other countertop grills and appliances that cook animal proteins such as chicken and steak, air fryers typically utilize a drip tray to catch drippings, keeping the fat vapors and drippings away from the heating element and allowing for easier clean-up and safer operation of the air fryer.

28.    Over the last decade, consumers began purchasing air fryers to make quick, healthy meals for their family. Depending on the size of the air fryer, it can cook entire chickens, steak, and various other foods. Consequently, numerous companies began designing, manufacturing, and selling air friers.

29.    Tristar is one such company that engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling the Air Fryers at

issue. It represents that "Tristar Products is committed to providing the best products…"[10]

30.    In its YouTube video, Tristar boasts that it works with celebrities, "legendary icons," specialists, and "opinion leaders that consumers trust to give them the real truth about great products."[11]

31.    Upon information and belief, Tristar began selling the Air Fryers online and through various authorized retailers in 2019.

32.    Specifically, Tristar advertises that the "Emeril Lagasse Power Air Fryer 360 gives you the power and versatility of an all-in-one air fryer and multi-cooker using seamless air flow combined with powerful, even heat."[12] Each of the Air Fryer models have multi-cooking use, up to 12 settings for "Airfry, toast, bagel, pizza, bake, broil, rotisserie, slow cook, roast, dehydrate, reheat, warm."[13]

---

[10] https://www.tristarcares.com/product/emeril-lagasse-power-airfryer-360-xl/
[11] https://www.youtube.com/channel/UCXe3Ke_Ugmo0kts_XwiMKkg (Last accessed October 6, 2021).
[12] https://www.emerileveryday.com/air-fryer-ovens/power-airfryer-360-xl-2.html (Last accessed October 4, 2021).
[13] *Id.*



14

33.    The Air Fryer's packaging represents that the purchaser can achieve "Deep-Fried Taste without the Added Calories," and that the Air Fryers are "Better Than Convection Ovens."

34.    The Air Fryer's packaging further states:

> Chef Emeril believes every home kitchen deserves the custom cooking capabilities of a commercial-grade ovens [sic]. Designed for effortless one-touch cooking, right on your countertop, the Power AirFryer 360, is a professional-quality, multi-cooker that combines seamless air-flower with powerful, even heat.

35.    The Owner's Manual further represents that the Air Fryers comply with UL standards, which establish industry-wide safety standards for consumer products.

---

[14] https://www.emerileveryday.com/air-fryer-ovens.html

36.    Each of the Air Fryers were designed and manufactured in substantially the same or similar way, and all contain the same Defect.  In fact, Tristar's website makes clear that the parts are interchangeable, with the only difference being the capacity to hold bigger or more food.[15]

37.    In the Air Fryers' Owner's Manual and other written documents authored by Tristar, Tristar expressly warrants that the Air Fryers are made for years of dependable operation and are manufactured from merchantable materials and workmanship. Specifically, the Owner's Manual begins by stating "[t]he Emeril Lagasse Power AirFryer 360™ will provide you many years of delicious family meals and memories around the dinner table."

38.    A Tristar YouTube video promoting the Air Fryers touts that they are a multifunction appliance that consumers will "use every day." The Air Fryers are purported to be a dehydrator, air fryer, convection oven, microwave, rotisserie, and toaster oven "all in one!"

39.    The Air Fryers utilize similar technology to the first developed air fryers, however, ignore important design features that ensure operating them is safe. This has a resulted in a uniform design Defect, which allows the Air Fryers to become overheated during normal and foreseeable use and also fails to prevent food

---

[15] https://www.tristarcares.com/product/emeril-lagasse-power-airfryer-360/ (Last accessed October 4, 2021) ("All parts are interchangeable between •Power AirFryer 360 (S·AFO-001), •Power AirFryer 360 Deluxe (S·AFO-001), •Power AirFryer 360 Plus (S·AFO-002).").

drippings (which are inevitably flammable) from coming into contact with the heating elements.

40.   The Air Fryers are designed and manufactured with five heating elements: two rod shaped elements on the top and two on the bottom of the inside of the cooking cavity, with a circular element and a smart fan (also referred to by Tristar as "AirFryer fan") with a turbo blade that is intended to circulate and distribute the heat evenly and prevent overheating.

41.   Tristar relies heavily on just how fast its Air Fryers cook given the added heating elements and air circulation design, and largely bases representations regarding quality on those features. In fact, it represents:[16]

  a. "The Secret Is The 5 Heating Elements With 360° Air Flow Technology"

  b. "The 360° Quick Cook Turbo Heat Technology cooks food in a whirlwind of super-heated air for up to 70% fewer calories from fat."

  c. "Super Heated Cyclonic Air For 360° Air-crisp Circulation Perfect To Air Fry, Rotisserie & Dehydrate & More!"

42.   Likewise, the Air Fryer's packaging also boasts "5 Heating Elements" and that the "Powerful fan creates a whirlwind of super-heated air for even cooking." It also states the Air Fryers have the following features:

  a. "1500 WAATTS [sic] OF POWER;"

---

[16] https://www.amazon.com/Emeril-Lagasse-Power-360-Convection/dp/B07NLHMYH4 (Tristar's official "From the manufacturer" Air Fryer page).

b. "COOKS FOOD 360º EVENLY FOR DELICIOUS, TASTY MEALS;"

c. "EXTRA-LARGE CAPACITY—LARGE ENOUGH TO COOK A 12" PIZZA OR A 10-LB ROASTED CHICKEN;"

d. TRUE AIR FRYER PERFORMANCE WITH SUPER-HEATED AIR TECHNOLOGY;" and

e. AUTOMATIC SHUT-OFF TIMER."

43.    However, these excessive heating elements are highly problematic and present a serious safety issue because, during regular and intended cooking, the excessive number of heating elements coupled with the fan's failure to properly circulate the hot air, allows the Air Fryers to reach temperatures up to 537°C (1000ºF). This is particularly dangerous as the spontaneous ignition temperature and the fire point are reached when temperature is increased to about 310-360°C.

44.    Had the Air Fryers been designed with an adequate, operational safety mechanism that would turn the units off once they reached an appropriate maximum temperature of about 310-360°C (which is several hundred degrees less than the Air Fryer's dangerously high maximum temperatures of up to 537°C (1000ºF)) the Air Fryers would not be able to reach such unsafe temperatures.

45.    This danger is exacerbated by the Air Fryer's drip tray design, which allows the inevitably flammable food drippings to reach the heating elements before the drip tray. Unlike other air fryer designs and manufacturing, the Tristar Air Fryers do not have protection above or around the bottom heating elements which would prevent direct contact between the heating elements and drippings.

46.    Remarkably, despite this danger, in its set-up and use instructions, Tristar repeatedly directs the consumer to "[i]nsert the Drip Tray below the bottom heating elements," and includes the below diagram in the Owner's Manual.[17]

## FIG. i



47.    Because the drip trays are designed to be placed flatly below the heating element, rather than above the heating element and/or at an angle, vapors and drippings from animal fat being cooked reach the heating elements before the drip trays. This is a serious safety issue given the extreme temperatures of the heating elements and the flammability of the drippings.

48.    Further, given the small space between the drip tray and the bottom cooking elements, what drippings are caught by the drip tray remain close to the

---

[17] https://www.tristarcares.com/wp-content/uploads/2020/06/EMERIL360XL_IB_TP_ENG_V4_190430_Web.pdf

heating elements and does not prevent vapors from the drippings from reaching the bottom heating elements.

49.    These drippings and vapors reach the heating elements while the food is being cooked and are not the result of residual drippings from previously cooked food. Accordingly, cleaning the drip trays does not prevent the failure.

50.    The failure to protect the heating element from animal fats is particularly dangerous because the "[t]ests on the fire properties of cooking fats used for deep frying have shown that when a cooking fat of any kind is overheated without food added, the spontaneous ignition temperature and the fire point are reached when the temperature is increased to about 310-360°C. There is, therefore, an immediate danger of fire at temperatures above about 310°C."[18]

51.    Thus, the fact that the Air Fryers reach up to 537°C (1000°F) due to the lack of air circulation and proper ventilation, almost ensures that the drippings from the food will ignite while in use.

52.    Plaintiff and the Class purchased their Air Fryers reasonably believing they were properly designed and manufactured, free from defects, and safe for their intended use.

53.    Plaintiff and the Class used their Air Fryers for their intended purpose of preparing meals at home in a manner reasonably foreseeable by Tristar.  However, as a result of the Defect, Plaintiff and Class Members are unable to safely use their

---

[18] https://iafss.org/publications/frn/610/-1

Air Fryers as intended because the Defect renders the Air Fryer unsafe by allowing the Air Fryer to overheat, not shut off or otherwise regulate temperature, causing the drippings to catch fire.

54.    Consequently, the Air Fryers suffer from a design Defect that poses an unreasonable risk of injury or property damage during normal use.

55.    Tristar had numerous alternative, feasible design options which would have prevented or reduced the risk of failure and fire, including:

    a.  Protection for the heating elements which would prevent contact between drippings/vapors and the heating elements;

    b.  Additional space between heating elements and the drip tray;

    c.  Tilted drip tray encouraging migration of the drippings away from the heating elements;

    d.  An operational safety mechanism preventing the Air Fryers from reaching temperatures created by the bottom heating elements from exceeding 360ºC (680 °F); and

    e.  Other ways to be identified in discovery.

56.    The alternative designs were available to Tristar when it designed, manufactured, and began selling the Air Fryers; however, it chose to use subpar design and manufacturing to save the costs of production.

57.    Numerous other brands utilize these and other superior methods of design and manufacturing in the production of air fryers for comparable sales pricing.

58.    The average service life of an air fryer is at least 3 years; however, the Air Fryers at issue fail prematurely.

59.    Tristar knew or should have known of the Defect and of the serious safety risk it posed to consumers and the public but chose to conceal knowledge of the Defect from Plaintiff and other consumers who purchased the Air Fryers.  Tristar continues to remain silent regarding the Defect and is continuing to sell the Air Fryers to unsuspecting consumers.

60.    Tristar has a 90-day money back "guarantee," as well as a 1-year replacement "guarantee" (collectively the "Warranty").

61.    Tristar's manifest intent that its warranties apply to Plaintiff and consumer Class Members as direct purchasers and third-party beneficiaries is evident from the statements contained in its product literature, including its Warranty.

62.    Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiary of the products and warranties.

63.    Tristar's Warranty provides as follows:[19]

Emeril Lagasse Power AirFryer 360 XL is covered by a 90-day money-back guarantee. If you are not 100% satisfied with your product, return the product and request a replacement product or refund. Proof of purchase is required. Refunds will include the purchase price, less processing, and handling. Follow the instructions in the Return Policy below to request a replacement or refund.

---

[19] https://www.tristarcares.com/product/emeril-lagasse-power-airfryer-360-xl/ (Last accessed October 9, 2021).

**Replacement Guarantee Policy:**
Our products, when purchased from an authorized retailer, include a 1-year replacement guarantee if your product or component part does not perform as expected, the guarantee extends only to the original purchaser and is not transferable. If you experience an issue with one of our products within 1 year of purchase, return the product or the component part for replacement with a functionally equivalent new product or part. The original proof of purchase is required, and you are responsible to pay to return the appliance to us. In the event a replacement appliance is issued, the guarantee coverage ends six (6) months following the receipt date of the replacement appliance or the remainder of the existing guarantee, whichever is later. Tristar reserves the right to replace the appliance with one of equal or greater value.

64.     Additionally, Tristar expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Air Fryers are fit for the ordinary purpose for which they are sold: safely cooking food.

65.     The Warranty fails of its essential purpose for the following reasons:

   a.  Tristar fails to disclose its knowledge of the Defect when contacted by customers about Air Fryer failures;

   b.  Despite its knowledge of the Defect, Tristar misrepresents to customers that the Air Fryer failures due to the Defect are anomalous and not a known pervasive failure; and

   c.  Tristar provides identically defective replacement Air Fryers when customers make warranty claims.

66.     As described herein, Tristar breached this Warranty at the time Plaintiff and Class Members purchased the Air Fryers because, unknown to consumers but known to Tristar, the Air Fryers were defective when they came off the assembly line and therefore could not have met customer expectations. Thus, at the time the

defective Air Fryers were sold to consumers, Tristar was already in violation of the express warranty.

67.    Further, because Tristar does not have non-defective Air Fryers available for replacement of failed Air Fryers, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the warranty is therefore breached immediately upon purchase.

68.    In addition, the Warranty has several terms that are unconscionable as follows:

    a.    In the 90-day and one-year time limitations when the latent Defect regularly does not manifest until after the expiration of the limitation;

    b.    In the failure and refusal to utilize a new time limitation at the time a replacement is sent to consumers who made warranty claims; and

    c.    In requiring the consumer to mail the failed unit back to Tristar at the consumer's expense.

69.    The Warranty is further unconscionable given Tristar's knowledge of the Defect, the existence of the Defect at the point of sale, Tristar's failure to disclose the Defect at the time of sale and during warranty communications, and in the premature failure of the Air Fryers.

70.    The Defect renders the Air Fryers unfit for the ordinary purpose for which they are used, which is to reliably and safely cook food.

71.    Had Plaintiff, Class Members, and the consuming public known that the Air Fryers were defective and would cause damage to other property, or a serious

risk of personal injury, they would not have purchased the Air Fryers at all or would not have paid the price they did.

72.    In sum, Tristar has actively concealed the existence and nature of the Defect from Plaintiff and Class Members, despite its knowledge of the existence and pervasiveness of the Defect, and certainly well before Plaintiff and Class Members purchased the Air Fryers and during warranty communications.  Specifically, Tristar has:

a.    Failed to disclose the Defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Tristar or its affiliates about the Defect;

b.    Actively concealed the Defect from consumers, at or after the time of purchase, including when consumers make warranty claims, or otherwise complain to Tristar about the Defect;

c.    Failed to disclose, and actively concealed the Defect from consumers, including that the Air Fryers were not fit for their intended purpose;

d.    Failed to disclose and actively concealed the Defect from consumers when it improperly and unlawfully denied valid warranty claims; and

e.    Failed to disclose and actively concealed the Defect from consumers when it provided them with defective replacement Air Fryers.

73.    On July 26, 2021, Plaintiff and more than a dozen other Air Fryer owners put Tristar on notice of the Defect, and Tristar's breach of warranties, breach of various consumer statutes, and resulting damages. After giving Tristar's counsel several extensions to respond to Plaintiff's letter, Tristar provided the following denial of liability on September 17, 2021:

We are not aware of situations in which the inner overheat protection system failed, certainly not in a way that would pose a safety danger. As you know, the units include an internal thermal sensor as a safety

feature that is specifically designed to cut power to the unit in the event it overheats for any reason.  To the extent anything (including, for example, overcooked food that catches fire) produces internal temperatures in excess of the thermal safety limit, the unit is designed to shut itself down.   While we have certainly seen instances of that happening, we have not seen instances in which the internal overheat protection system failed in a way that caused a fire or injury.

Tristar's response went on to indicate that it was possible that the more than dozen consumers who had experienced failure of the unit were somehow improperly storing or using their Air Fryers.

74.    However, Plaintiff and Class Members experienced failure, overheating, smoking, and fire despite reading and adhering to the Owner's Manual, and all storage and usage instructions contained therein.

75.    Additionally, the "internal thermal sensor" cannot be operational, as the Air Fryers reach temperature up to 537°C (1000ºF) from the bottom heating elements, which is several hundred degrees more than it can be safely operated at.

76.    As a result of Tristar's conduct, Plaintiff and the Class have suffered damages, including, without limitation:  (a) the purchase price of the Air Fryers, as Plaintiff and the Class would not have purchased the product had he been informed of the Defect; (b) their failure to receive the benefit of their bargain; (c) their overpayment for the Air Fryers; (d) the costs of repair or replacement of the Air Fryers; (e) damages to real and/or personal property; and/or (f) damages for personal injuries.

## **PLAINTIFF'S EXPERIENCE**

77.    In October of 2019, Plaintiff Jacqueline Simmons saw a television infomercial[20] featuring Emeril Lagasse using his own Emeril Lagasse branded Air Fryer.

78.    The infomercial represented that the Air Fryer was high quality, multi-functional, and safer and healthier for cooking through its use of air instead of oil.

79.    Plaintiff Simmons decided to visit the Emeril Lagasse Power AirFryer 360 website advertised in the infomercial, where she learned more about the Air Fryer's features. She ultimately purchased an Emeril Lagasse Power Air Fryer 360 XL directly through the website for more than $200.

80.    Plaintiff Simmons read and followed the safety and usage instruction documents that came with her Air Fryer before using it.

81.    In summer of 2020, Plaintiff Simmons attempted to use the Air Fryer for the first time to cook chicken. Shortly after starting the Air Fryer, she heard the smoke detector go off in her kitchen. When she went into the kitchen to investigate, she observed that the interior of the Air Fryer had caught on fire.

82.    Plaintiff Simmons was able to extinguish the fire with water but was unable to salvage her meal.

---

[20] An infomercial is "a television program that is an extended advertisement often including a discussion or demonstration." https://www.merriam-webster.com/dictionary/infomercial

83.    A few days later, Plaintiff Simmons called Tristar to notify it about the incident. When she spoke to a Tristar representative, she was told that there was nothing they could do to repair or replace the Air Fryer. Further, they denied knowledge of any defect and suggested that the fire was the result of Plaintiff Simmons's improper use.

84.    Because Tristar fraudulently concealed the Defect from her before her purchase, Plaintiff Simmons did not suspect (and had no reason to suspect) that there was anything wrong with her Air Fryer until the Defect manifested itself after the first use.

85.    Plaintiff Simmons's Air Fryer did not operate safely for its life expectancy. Had Plaintiff Simmons known of the Defect, she would have either not purchased the Air Fryer or would have paid less than she did for it. Therefore, she did not receive the benefit of her bargain.

86.    As stated above, on July 26, 2021, Plaintiff Simmons and more than a dozen other Air Fryer owners put Tristar on notice of the Defect, and Tristar's breach of warranties, breach of various consumer statutes, and resulting damages.

## TRISTAR'S ACTUAL OR
## CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

87.    Tristar knew or should have known when it sold the Air Fryers to the public that the Air Fryers suffered from the Defect, and that the Defect caused the

Air Fryers to function improperly during their expected useful life, fail prematurely, and might result in significant property damage to consumers and the public.

88.    Tristar's knowledge of these facts is established through consumer complaints, including several years of public Internet posts on consumer websites, complaining that the Air Fryers failed during normal use. Despite its knowledge, Tristar did not remedy or eliminate the defect in the Air Fryers or remove them from the stream of commerce.

89.    Instead, Tristar replaced the defective Air Fryers with equally defective Air Fryers, and/or improperly denied warranty claims.

90.    Years of customer complaints, a YouTube video, and a news story involving a house fire, are also available online regarding the Air Fryers.

91.    Alarmingly, a Southwest Florida news outlet (WINK) ran a story more than a year ago involving a home fire caused by an Air Fryer.[21]   In the story, the consumer indicated that despite turning the unit off, she awoke to smoke and fire coming from the Air Fryer.

92.That WINK news report also indicated that:[22]

Fischer isn't the only unhappy customer.

An Amazon user wrote in 2019 that theirs "began emitting white smoke with smell of electrical fire."

---

[21] https://www.winknews.com/2020/08/25/woman-says-air-fryer-filled-home-with-smoke-in-the-middle-of-the-night/

[22] *Id.*

Two other people complained to the Consumer Product Safety Commission website this year that their Emeril Lagasse Power Air Fryer's, one of which was a slightly different model, exploded while in use.

93. After WINK reached out to Tristar, it only responded as follows:[23]

The manufacturer, Tristar Products, Inc. told us in a statement that "Tristar is committed to consumer safety. It is our number one priority. This product meets all applicable industry standards. We are investigating the matter.

94.    Although the WINK report noted that Tristar issued the consumer a refund, it failed to take any additional remedial steps with regard to the known Defect.

95.    Numerous other online complaints demonstrate similar experiences with the Air Fryers overheating, smoking, and igniting.

96.    In 2020, numerous complaints were made on authorized retailers' online stores, as follows:

a.    In April of 2020, Amazon customer, "Declan reen," posted:[24]

**1.0 out of 5 stars It's smokes a lot**
Reviewed in the United States on April 16, 2020
Verified Purchase
Did not like it smoke too much

b.    In May of 2020, Amazon customer "Viv" posted:[25]

---

[23] *Id.*

[24] https://www.amazon.com/product-reviews/B07Z9HNY75/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (Last accessed October 18, 2021)

[25] *Id.*

**1.0 out of 5 stars DISAPPOINTED/ UPSET**
Reviewed in the United States on May 4, 2020
Verified Purchase
Product came defective. Shut down twice and smoked up the whole house with only two pieces of chicken. Attempted to air fry some fries after 25 min looked good BUT RAW.
Tried retuning via UPS they want me to pay $73.00. I am awaiting response from Seller /Amazon. This is bad for business.

c.  In August of 2020, "CM" posted:[26]

**1.0 out of 5 stars Appliance smokes while cooking**
Reviewed in the United States on August 10, 2020
Verified Purchase
Unable to use in house because it smokes so badly! I have only used the appliance 2 times; once to rotesserie and once to air fry chicken. Both times I had to take the thing to the back porch to finish cooking. If I still had the box I would send it back!

d.  In November of 2020, another Amazon customer posted:[27]

**2.0 out of 5 stars Dissatisfied, very disappointed**
Reviewed in the United States on November 14, 2020
Verified Purchase
I like the taste of the food, litle complicated at the beginning, You tube information is a big help.
I dont like from this Airfrier that I observed the area where i used it ( the kitchen counter) underneath the unit was a spill of oil 🙁 , that came out from the air frier..also a lot of smoke occurs during the process of cooking using the airfrier, a lot of smoke (ridiculous) I have to wash the drip tray 3 times / pause the unit let cooldown opened and removed the spill tray to wash and place it back in the unit.. 🙁 😠 you can make delicious rotisery, any kind of meat..but its too much work...I have an apartment and in this cold weather I have to open the windows use a lot ventilation before the fire alarm went of. I can't give 5 stars...is

---

[26] *Id.*
[27] https://www.amazon.com/product-reviews/B07Z9HNY75/ref=cm_cr_arp_d_viewopt_sr?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews&pageNumber=1#reviews-filter-bar (Last accessed October 18, 2021)

not worth it the price...others Airfrier cook delicious food too without having to go to the hassle . 👎

e.  In that same month, a Walmart customer posted:[28]

1 out of 5 stars review
11/3/2020
If you are a fan of smoke buy this product
Absolutely ridiculous product, poorly designed Grease falls on heating elements,then fills your entire kitchen with smoke ,very noisy,just plain CHEAP!!!!!

f.  In the following month, another Walmart customer reviewed as follows:[29]

1 out of 5 stars review
12/30/2020
It will smoke up your house!
Did not cook my wings evenly. I cooked them over 30minutes and they still weren't cooked right. So much smoke started coming out of it i gave up. Really Bad prouduct!

g.  In December of 2020, another Amazon user posted:[30]

**1.0 out of 5 stars Hazardous product**
Reviewed in the United States on December 7, 2020
Dangerous, hazardous, unsafe to use. Whole product is very hot, you can only touch the handle and must be careful because you'll burn yourself easily. A rip off company. I want to return this product and they were saying that I am responsible for the shipping and handling. But their advertisements say 90 day money back guarantee. Bad bad bad company. I am asking for the paid return label and they don't want to give it to me. Please help.

---

[28] https://www.walmart.com/reviews/product/219103756?filter=1&page=2 (Last accessed October 18, 2021).
[29] *Id.*
[30] https://www.amazon.com/product-reviews/B07Z9HNY75/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (Last accessed October 18, 2021)

h.  Also in December of 2020, a user posted:[31]

**1.0 out of 5 stars SMOKE filling the kitchen- Do not buy!**
Reviewed in the United States on December 27, 2020
Made burgers today and followed instructions. The drip tray is placed
UNDERNEATH the heating elements. The grease from the burgers
drip onto the elements and burn. Smoke fills the machine and comes
out of the door. Another major flaw is that the drip pan is shallow, so
cooking a rotisserie roast or anything that has substantial amount of
drippings would be an issue. You would have to pause cooking and
wait until drip pan cools down enough for you to safely lift it out.

There was so much smoke coming out of the machine that it made me
search for complaints about a smoking issue. I discovered that
numerous people had similar experiences with smoke filling up the
entire kitchen. Some people had fires and part of the machine melted
along with property damage. I also learned that attorneys are also
working on possibly filing a Class Action lawsuit. I am not playing
with fire so I will be returning my machine.

97.    In 2021, complaints continued, and yet, Tristar took no action to
remove the dangerous Air Fryers from the market, issue a recall or warning:

a.  In January of 2021, an Amazon customer posted:[32]

**1.0 out of 5 stars Dangerous, could burn your house.**
Reviewed in the United States on January 19, 2021
The worse purchase ever, this guy should be ashamed to sell this kind
of product, the cord gets so hot that almost melt the outlet, it is not
ground it, no mater what you do it will leave the house full of smoke.

b.  In or about January of 2021, a Bed Bath & Beyond customer posted:[33]

---

[31] *Id.*
[32] *Id.*
[33] https://www.bedbathandbeyond.com/store/product/emeril-trade-lagasse-360-
power-air-fryer-in-
silver/5353607?skuId=68077654&enginename=google&mcid=PS_googlepla_n
onbrand_liakitchenelectricsvendor_local&product_id=68077654&adtype=pla&

Not Recommended

Scared to use this thing, the outside gets way to hot for where I must
sit it. Afraid it will set my cabinet on fire. And cannot seem to get a
response on a return authorization.

Originally posted on Tristar Products

c.  In or about February of 2021, a Costco customer complained online
regarding smoke:[34]

1 out of 5 stars.
· 8 months ago
Not worth your time

This is a noisy oven, my counter convection oven is so quiet this is a
big disappointment. The cooking of steaks and burgers is without a
tray so grease drippings hit the burners and smoke. I can do what this
oven does in my main convection oven given the larger space. The
rotisserie , well not worth putting up with the noise of the cheap fan.

d.  In February of 2021, another Amazon customer, "Chris" posted:[35]

**1.0 out of 5 stars Caught fire**
Reviewed in the United States on February 18, 2021
Verified Purchase
Hopefully my second one will perform better. My first one after two
months spontaneously caught fire

---

product_channel=local&adpos=&creative=544161684478&device=c&matchty
pe=&network=g&gclid=Cj0KCQjwtrSLBhCLARIsACh6RmiWh4eAAcBlO07
_b4lU7h2GUgonrJkofkxQPPEzfyPJfh0_8L1U-EIaAnp-
EALw_wcB&gclsrc=aw.ds (Last accessed October 18, 2021).
[34] https://www.costco.com/emeril-lagasse-power-airfryer-
360xl.product.100714687.html (Last accessed October 18, 2021).
[35] https://www.amazon.com/product-
reviews/B07Z9HNY75/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&re
viewerType=all_reviews#reviews-filter-bar (Last accessed October 18, 2021)

e.  That same month, another customer posted:[36]

**2.0 out of 5 stars Safety issue**
Reviewed in the United States on February 6, 2021
Verified Purchase
Unit has hot exterior. Not for a home with children.

f.   In the following month, "Ronald" posted:[37]

**1.0 out of 5 stars Don't leave it plugged in**
Reviewed in the United States on March 28, 2021
Verified Purchase
Burned up while no one was home!! It was left plugged in , house was full of smoke.Really like it while it worked, but don't think i'll buy another.



g.  In April of 2021, a Walmart customer negatively reviewed the Air Fryer:

4/23/2021

---

[36] https://www.amazon.com/product-reviews/B07Z9HNY75/ref=cm_cr_getr_d_paging_btm_next_2?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews&pageNumber=2#reviews-filter-bar (Last accessed October 18, 2021).

[37] https://www.amazon.com/product-reviews/B07Z9HNY75/ref=cm_cr_arp_d_viewopt_sr?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews&pageNumber=1#reviews-filter-bar (Last accessed October 18, 2021)

Smokes up kitchen

Disappointed in air fryer. Drips on lower heat strip when air frying chicken pieces. Smokes up kitchen. Not Emeril's best product. Wish I could get my money back.[38]

h.  Also in April of 2021, a Costco customer complained:[39]

1 out of 5 stars.
· 6 months ago
Equal to low budget units.

Set the smoke alarm twice. No seal on door steam from inside fogged LED display. Trays slide out and won't lock.

i.  In May of 2021, "action a." posted on Amazon:[40]

**1.0 out of 5 stars Poor design on several features.**
Reviewed in the United States on May 29, 2021
Verified Purchase
Agree with others: Poor design regarding cleaning. Dangerous heating of exterior surfaces.
Difficult to attach rotisserie. Difficult to remove rotisserie aftwards.
Smokes up house when cooking anything due to poorly designed grease tray.
Raises electric bill dramatically due to long ' pre-heat' time. Like so many of you have stated, the cost to return a poorly designed product is unfair.
I have turned this issue over to Federal Consumer Protection Agency. I hope all who purchased this have done the same.
Am going back to my great old 'Set it and forget it' Showtime Rotisserie unit purchased 20 years ago and still going strong.
Just for reference purpose's-I've been cooking for over 45 years.

---

[38] https://www.walmart.com/reviews/product/219103756?filter=1 (Last accessed October 18, 2021).

[39] https://www.costco.com/emeril-lagasse-power-airfryer-360xl.product.100714687.html (Last accessed October 18, 2021).

[40] https://www.amazon.com/product-reviews/B07Z9HNY75/ref=cm_cr_arp_d_viewopt_sr?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews&pageNumber=1#reviews-filter-bar (Last accessed October 18, 2021)

j.  In June of 2021, another Amazon customer, "Nathan P" stated:[41]

**1.0 out of 5 stars #1 Rule.... Infomercials = JUNK**
Reviewed in the United States on June 2, 2021
Verified Purchase
Super disappointed after all the hype. I goggled it and got all kids of adds everywhere as soon as I purchased.

1st - the thing gets super hot and radiates an abnormal amount of heat. Dangerous for small children.

We tried the air fryer features, and we're super disappointed. We tried several different recipes, and nothing was good. The fryer just didn't perform the way it was hyped.

But if you do buy it, get an extra fryer basket if there are more than 2 people in your family.

k.  In August of 2021, another customer posted:[42]

**2.0 out of 5 stars Didn't like that the oils drip on the heating elements**
Reviewed in the United States on August 12, 2021
Verified Purchase
The oven got too hot on the outside and the oils from the food were falling on the heating elements inside the oven setting off my smoke detectors

l.  In or about August of 2021, a Bed Bath & Beyond customer posted:[43]

---

[41] *Id.*

[42] https://www.amazon.com/product-reviews/B07Z9HNY75/ref=cm_cr_getr_d_paging_btm_next_2?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews&pageNumber=2#reviews-filter-bar (Last accessed October 18, 2021).

[43] https://www.bedbathandbeyond.com/store/product/emeril-trade-lagasse-360-power-air-fryer-in-silver/5353607?skuId=68077754&enginename=google&mcid=PS_googlepla_nonbrand_liakitchenelectricsvendor_local&product_id=68077754&adtype=pla&product_channel=local&adpos=&creative=544161684478&device=c&matchty

Poor choice on my side
Been taken · 3 months ago
Not Recommended

The unit is to large and the outside case gets extremely hot. Went to return just to find out that returning cost were almost as much as the original purchase

m. Another Bed Bath & Beyond customer, "Mal 42," who had previously posted on the Tristar website negatively reviewed as follows:[44]

Not Recommended

I was really disappointed. Had been looking for which model to get and decided on Emeril's. The cleaning was NOT easy. Drippings caused so much smoke. It took soooo long to cook the food. The drippings even leaked out of the bottom. And there was no way to clean it out easily.

98.    Recently, in May of 2021, a YouTube vlogger posted a video showing the drippings from a turkey being cooked in the Air Fryer at 400ºF (204°C). The drippings fell onto the bottom heating element and were ignited. The video also showed smoke billowing out of the front and sides of the Air Fryer.[45]

99.    To date, despite numerous complaints, Tristar has not taken any remedial measures to prevent additional fires and injuries caused by the Defect in the Air Fryers.

---

pe=&network=g&gclid=Cj0KCQjwtrSLBhCLARIsACh6RmiWh4eAAcBlO07_b4lU7h2GUgonrJkofkxQPPEzfyPJfh0_8L1U-EIaAnp-EALw_wcB&gclsrc=aw.ds (Last accessed October 18, 2021).

[44] *Id.*

[45] https://www.youtube.com/watch?v=UmGz7v6H87U (Last accessed October 18, 2021).

100.   Many of the same websites evidenced complaints related to Tristar's poor warranty practices and procedures, including:

    a.   Improper denials of warranties;

    b.   Replacing units with similarly defective units;

    c.   Requiring that the defective Air Fryer be shipped back to Tristar at the cost of the consumer; and

    d.   Failure to take any additional steps to remedy the poor product.

101.   In conjunction with Tristar's vast experience with kitchen appliances (both good and bad), including designing, manufacturing and selling the Air Fryers, these facts and complaints illustrate that Tristar knew or should have known of the Defect.

102.   Tristar has a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class Members. Tristar's failure to disclose, or active concealment of, the dangerous Defect places Plaintiff and Class members at risk of property damage and personal injury.

103.   Tristar is currently still selling the defective Air Fryers, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Air Fryers.

104.   Moreover, Tristar continues to falsely represent through written warranties and manuals that the Air Fryers are of merchantable quality and will perform dependably for years.

105.   When corresponding with customers, Tristar does not disclose that the Air Fryers suffer from the Defect. As a result, reasonable consumers, including

Plaintiff and Class Members, purchased and used, and continue to purchase and use the Air Fryers in their homes even though they will prematurely fail and cause damage to other property and injury to the consumer.

106.    When Tristar replaces units, it fails to disclose the known Defect and it replaces the defective Air Fryers with equally defective Air Fryers.

107.    Had Plaintiff, Class Members, and the consuming public known that the Air Fryers had a safety Defect, would prematurely fail and cause potential damage to their property and personal injury, they would not have purchased the Air Fryers.

108.    Tristar has wrongfully placed on Plaintiff and Class members the burden, expense, and difficulty involved in discovering the safety Defect, replacing the Air Fryers (potentially multiple times), and paying for the cost of damages caused by the defect.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

109.    Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their Air Fryers were defective within the time-period of any applicable statutes of limitation.

110.    Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Air Fryers contain the dangerous Defect, which poses a risk of personal injury and damage to other property.

111.   Further, Plaintiff and Class Members had no knowledge of the Defect and it occurred in a part of the Air Fryers that is not visible to consumers. Tristar attempted to conceal its knowledge of the Defect or otherwise capitalize on it further by selling defective replacement parts.   Accordingly, any applicable statute of limitation is tolled.

## B.    Fraudulent Concealment Tolling

112.   Throughout the time period relevant to this action, Tristar concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the safety Defect described herein.

113.   Tristar kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the safety Defect, even upon reasonable exercise of diligence.

114.   Throughout the Class Period, Tristar has been aware that the Air Fryers contained the Defect, resulting in premature failure, overheating, smoking, and fire.

115.   Despite its knowledge of the Defect, Tristar failed to disclose and concealed, and continues to conceal, this critical information from Plaintiff and the other Class Members, even though, at any point in time, it could have disclosed the Defect through recall as it has done with prior products, individual correspondence, media release, or by other means.

116.    Additionally, Tristar failed to disclose and concealed the Defect from Plaintiff and Class Members during warranty calls.

117.    Tristar continued to deny any Defect when put on notice by Plaintiff and similar consumers.

118.    Plaintiff and the other Class Members justifiably relied on Tristar to disclose the Defect in the Air Fryers that they purchased, because the Defect was hidden and not discoverable through reasonable efforts by Plaintiff and the other Class Members.

119.    Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other Class Members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

## C.    Estoppel

120.    Tristar was under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of the defective Air Fryers.

121.    Tristar knowingly concealed the true nature, quality, and character of the dangerously defective Air Fryers from consumers.

122.    Based on the foregoing, Tristar is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

123.   Plaintiff brings this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

124.   The California Class is defined as:

**During the fullest period allowed by law, all persons in the State of California who purchased a Tristar manufactured Air Fryer from an authorized retailer.**

125.   Excluded from the Classes are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

126.   Plaintiff reserves the right to amend or modify the Class definitions after they have had an opportunity to conduct discovery.

127.   Numerosity: Fed. R. Civ. P. 23(a)(1). The Classes are so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that thousands of consumers have purchased the Class Air Fryers in California.

128.   Commonality: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to all Class Members, which predominate over any

questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  whether the Air Fryers are defectively designed or manufactured;

b.  whether the Defect poses a safety hazard to Plaintiff and the Class;

c.  whether the fact that the Air Fryers suffer from the Defect would be considered material to a reasonable consumer;

d.  whether, as a result of Tristar's concealment or failure to disclose material facts, Plaintiff and Class Members acted to their detriment by purchasing Air Fryers manufactured by Tristar;

e.  whether and when Tristar became aware of the Defect;

f.  whether Tristar's warranties are unconscionable;

g.  whether Tristar misrepresented certain qualities regarding its Air Fryers;

h.  whether Tristar breached express warranties with respect to the Air Fryers;

i.  whether Tristar has a duty to disclose the defective nature of the Air Fryers to Plaintiff and Class Members;

j.  whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

k.  in other ways to be supplemented as a result of discovery.

129.    Adequate Representation: Plaintiff will fairly and adequately protect the interests of Class Members.  Plaintiff have retained attorneys experienced in the

prosecution of class actions, including consumer and product defect class actions, and Plaintiff intend to prosecute this action vigorously.

130.    **Predominance and Superiority:** Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Tristar's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Tristar's misconduct. Absent a class action, Class Members will continue to incur damages, and Tristar's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

131.    **Ascertainability:** Class Members may be ascertained through authorized retailers of Tristar, as well as through purchasers on Tristar's website(s).

## FIRST CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
#### (Plaintiff Individually and on Behalf of the Class)

132.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

133.    In connection with its sale of the Air Fryers, Tristar expressly warranted that they were suitable for the safe cooking of food.

134.    The defectively designed Air Fryers are subject to and otherwise covered by the Warranty, which applies to each Air Fryer.

135.    At all times referenced herein, Tristar was the "seller" of the Air Fryers.

136.    At all times referenced herein, the Air Fryers were "goods."

137.    Tristar's representations in its Warranty and regarding the reliability and durability of the Air Fryers, among other representations, each constitute affirmations of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

138.    These descriptions and representations were made part of the basis of the bargain and created an express warranty that the goods shall conform to the description.

139.    Each of the Air Fryers likewise has an identical or substantially identical Warranty.

140.    Tristar was obligated, under the terms of the express warranty to adequately repair or replace the defective Air Fryers for Plaintiff and Class Members.

141.    Privity is not required because Plaintiff and each of the members of the Class are the intended beneficiaries of Tristar's warranties and its sale through

retailers.  The retailers were not intended to be the ultimate consumers of the Air
Fryers and have no rights under the warranty agreements provided by Tristar.

142.   More specifically, Tristar's manifest intent that its warranties apply to
Plaintiff and consumer Class Members as third-party beneficiaries, is evident from
the statements contained in its product literature, including its Warranty, which
specifically states the warranty applies to purchasers from authorized retailers.
Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members
would be the intended beneficiaries of the products and warranties.

143.   In its Warranty, Tristar warrants that the Air Fryers would be subject to
replacement when the product failed to perform as expected, for one year from the
date of purchase.

144.   Tristar's warranty representations are made online, on its packaging,
through its various manuals, and its Warranty.

145.   Tristar breached the warranty because it improperly and unlawfully
denies valid warranty claims, and it has failed or refused to adequately repair or
replace the Air Fryers with non-defective units or parts.

146.   Plaintiff and the Class Members have privity of contract with Tristar
through their purchase of the Air Fryers, and through the express written and implied
warranties that Tristar issued to its customers. Tristar's warranties accompanied the
Air Fryers and were intended to benefit end-users of the Air Fryers.

147.   The express written warranties covering the Air Fryers were a material part of the bargain between Tristar and consumers. At the time it made these express warranties, Tristar knew of the purpose for which Air Fryers were to be used.

148.   Tristar breached its express warranties by selling Air Fryers that were, in actuality, not free of defect and, therefore, could not meet the purchaser's expectations because they would inevitably fail prematurely, were not made from merchantable material and workmanship, and could not be used for the ordinary purpose of reliably and safely cooking food.

149.   Tristar breached its express written warranties to Plaintiff and Class Members in that the Air Fryers are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a risk of damage and personal injury to Plaintiff and Class Members.

150.   The Air Fryers that the Plaintiff and Class Members purchased contained a Defect that caused each of them damages, including overheating, smoke, fire, premature failure, loss of the product, loss of the benefit of their bargain, and other property damage.

151.   The limitations and the exclusions in Tristar's Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, as described *supra*, particularly in light of the fact that Tristar knew that the Air Fryers suffered from the Defect described herein.

152.   Any attempt by Tristar to limit or disclaim the express warranty in a manner that would exclude coverage of the defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Tristar's concealment of material facts.  Thus, any such effort to disclaim, or otherwise limit, its liability for the Defect is null and void.

153.   The Warranty further fails of its essential purpose because only defective Air Fryers are available to replace the defective Air Fryers.

154.   Moreover, Tristar was put on constructive notice about its breach through its review of consumer complaints dating back approximately two years ago, as well as through appliance sale and repair entities, and, upon information and belief, through product testing.

155.   On or around July 26, 2021, Plaintiff put Tristar on notice of the Defect prior to the filing of this lawsuit.  As any replacement Air Fryer also contains the Defect, any offer to replace is insufficient.

156.   Despite having notice and knowledge of the defective nature of the Air Fryers, Tristar failed to provide any relief to Class Members with Air Fryers more than one year old, failed to provide a non-defective replacement Air Fryer to Plaintiff and Class Members, and otherwise failed to offer any appropriate repair or compensation from the resulting damages.

157.   Tristar breached its express warranty to adequately repair or replace the Air Fryers despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Air Fryers.

158.   To the extent that Tristar offered to replace the defective Air Fryers, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff and Class Members whole because the warranty covering the Air Fryers gives Tristar the option to repair or replace the Air Fryer, where neither is sufficient. Specifically, in its course of business, Tristar often has opted to provide a replacement Air Fryers to complaining consumers; however, the replacement Air Fryer likewise contains the Defect, resulting in the same or similar damages.

159.   Many of the damages resulting from the defective Air Fryers cannot be resolved through the limited remedy of replacement, as incidental and consequential damages from smoke and fire that Plaintiff and Class Members have already suffered due to Tristar's conduct as alleged herein.

160.   Accordingly, recovery by Plaintiff and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

161.   Had Plaintiff, Class Members, and the consuming public known that the Air Fryers were defective, would cause damage, or that Tristar would not properly honor its warranty, they would not have purchased the Air Fryers or would have paid less for them.

162.   To the extent any express warranties do not by their terms cover the Defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiff and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiff and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

163.   Plaintiff and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of Tristar or by operation of law in light of Tristar's conduct described throughout this Complaint.

164.   Tristar has received timely notice regarding the problems at issue in this litigation, and notwithstanding, Tristar has failed and refused to offer an effective remedy.

165.   As a direct and proximate result of Tristar's breach of its express written warranties, Plaintiff and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to the cost of inspection, repair, damage to other property, and diminution in value.  Plaintiff and Class members suffered damages at the point of sale stemming from their overpayment for the defective Air Fryers, in addition to water damage to other property, and loss of the product and its intended benefits.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
### (Plaintiff Individually and on Behalf of the Classes)

166.   Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

167.   Tristar is and was at all relevant times a merchant with respect to the Air Fryers.

168.   The Air Fryers are and were at all relevant times "goods."

169.   Tristar was at all relevant times involved in the manufacturing, and is the distributor, warrantor, and/or seller of the Air Fryers.

170.   Tristar knew or had reason to know of the specific use for which the Air Fryers, as goods, were purchased.

171.   Tristar entered into agreements with retailers, suppliers, and/or contractors to sell its Air Fryers to Plaintiff and Class Members.

172.   Tristar provided Plaintiff and Class Members with implied warranties that the Air Fryers were merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers and their property.

173.   However, the Air Fryers are not fit for their ordinary purpose of providing reasonably reliable method of safely cooking food because, *inter alia*, the Air Fryers contain a safety Defect preventing the Air Fryers from reliably and safely

cooking food without overheating, smoking, and catching fire.  Therefore, the Air Fryers are not fit for their particular purpose of reliably and safely cooking food.

174.   Plaintiff and Class Members have had sufficient direct dealings with either Tristar or one of its agents to establish privity of contract between Tristar, on the one hand, and Plaintiff and each Class Member, on the other hand.

175.   Privity is not required because Plaintiff and each of the Class Members are the intended beneficiaries of Tristar's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Air Fryers and have no rights under the warranties provided by Tristar.  Tristar's warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the Air Fryers.

176.   More specifically, Tristar's manifest intent that its warranties apply to Plaintiff and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically applies to purchasers of Air Fryers from authorized retailers. Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiary of the products and warranties.

177.   Tristar impliedly warranted that the Air Fryers were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Air Fryers manufactured, supplied, distributed, and/or sold by

Tristar were safe and reliable for cleaning dishes; and (ii) a warranty that the Air Fryers would be fit for their intended use while the Air Fryers were being operated.

178.   Contrary to the applicable implied warranties, the Air Fryers, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable and safe methods of cooking food.  Instead, the Air Fryers suffer from a defective design and/or manufacture, as alleged herein.

179.   Tristar's failure to adequately repair or replace the defective Air Fryers, and its general inability to do so, has caused the warranty to fail of its essential purpose.

180.   Tristar breached the implied warranties because the Air Fryers were sold with the Defect, which substantially reduced and/or prevented the Air Fryers from being used for safe cooking.

181.   Plaintiff provided Tristar notice of its breach on July 26, 2021, prior to the filing of this Complaint.

182.   Moreover, Tristar was put on constructive notice about its breach through its review of consumer complaints and other reports described herein, and, upon information and belief, through product testing.

183.   Had Plaintiff, Class Members, and the consuming public known that the Air Fryers were defective or would cause damage, they would not have purchased the Air Fryers or would have paid less for them.

184.   As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## THIRD CAUSE OF ACTION
## (IN THE ALTERNATIVE)
### Breach of Contract
### (Plaintiff Individually and on Behalf of all Class Members)

185.   Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

186.   To the extent Tristar's commitment is deemed not to be a warranty under California's Uniform Commercial Code, Plaintiff plead in the alternative under common law warranty and contract law.

187.   Plaintiff and Class Members purchased the Air Fryers from Tristar or through authorized retailers.

188.   Tristar expressly warranted that the Air Fryers were fit for their intended purpose and that they were suitable of safely cooking food.

189.   Tristar made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Tristar.

190.   Tristar breached the warranties and/or contract obligations by placing the defective Air Fryers into the stream of commerce and selling them to consumers, when it knew the Air Fryers contained the Defect, were prone to premature failure,

would not reliably or safely heat food, and posed a risk of personal injury and property damage.  These deficiencies substantially and/or completely impair the use and value of the Air Fryers.

191.   The deficiencies described existed when the Air Fryers left Tristar's possession or control and were sold to Plaintiff and Class Members.   The deficiencies and impairment of the use and value of the Air Fryers were not discoverable by Plaintiff or Class Members at the time of the purchase of the Air Fryers.

192.   Had Plaintiff, Class Members, and the consuming public known that the Air Fryers were defective or would cause damage, they would not have purchased the Air Fryers or would have paid less for them.

193.   As a direct and proximate cause of Tristar's breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the Air Fryers if they knew the truth about the dangerous, defective condition of the Air Fryers.

**FOURTH CAUSE OF ACTION**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment**
**(Plaintiff Individually and on Behalf of all Class Members)**

194.   Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

195.   This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Class

Members and Tristar do not govern the subject matter of the disputes with Tristar, or that Plaintiff do not have standing to assert any contractual claims against Tristar.

196.    Plaintiff and Class Members conferred a monetary benefit on Tristar, and Tristar had knowledge of this benefit. The average price paid by Plaintiff and Class Members for the Air Fryers was more than $150.00.

197.    By its wrongful acts and omissions described herein, including selling the defective Air Fryers, Tristar was unjustly enriched at the expense of Plaintiff and Class Members.

198.    Plaintiff's and Class Members' detriment and Tristar's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

199.    It would be inequitable for Tristar to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Air Fryers.

200.    Plaintiff and Class Members seek restitution from Tristar and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Tristar from its wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

## FIFTH CAUSE OF ACTION
### Violation of the California Consumer Legal Remedies Act ("CLRA") California Civil Code §§ 1750, *et seq.*

201.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

202.    The conduct described herein took place in the state of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

203.    The CLRA applies to all claims of Plaintiff Simmons and California Class Members because the conduct which constitutes violations of the CLRA by Defendant occurred within the State of California.

204.    Plaintiff Simmons and California Class Members are "consumers" as defined by Civil Code § 1761(d).

205.    Defendant is a "person" as defined by California Civil Code § 1761(c).

206.    The Air Fryers qualify as "goods" as defined by California Civil Code § 1761(a).

207.    Plaintiff Simmons and the California Class Members' purchases of the Air Fryers are "transactions" as defined by California Civil Code § 1761(e).

208.    As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer unlawful:

    a.    "Representing that goods...have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do no have." Civil Code § 1770(a)(5); and

b. "Representing that goods...are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

209.   Defendant engaged in unfair competition and/or unfair or deceptive acts or practices in violation of California Civil Code §§ 1770(a)(5) and (a)(7) when it represented, through its advertising and other express representations, that the Air Fryers had benefits or characteristics that it did not actually have.

210.   As detailed in this Complaint, Defendant engaged in uniform marketing efforts to reach California Class Members, their agents, and/or third parties upon whom they relied, to persuade them to purchase and use the Air Fryers manufactured by Defendant. Defendant's packaging, advertising, marketing, website, and retailer product identification and specifications contain numerous false and misleading statements regarding the quality, benefits, characteristics and safety of the Air Fryers.

211.   Specifically, the Air Fryers were not and is safe for consumers, UL compliant, or maintains "seamless air-flower with powerful, even heat," and is unable to be "use(d) every day." As detailed above, Defendant violated the CLRA when it falsely represented that the Air Fryers meets a certain standard or quality.

212.    Additionally, Tristar relies heavily on just how fast its Air Fryers cook given the added heating elements and air circulation design, and largely bases representations regarding quality on those features. In fact, it represents:[46]

a. "The Secret Is The 5 Heating Elements With 360° Air Flow Technology"

b. "The 360° Quick Cook Turbo Heat Technology cooks food in a whirlwind of super-heated air for up to 70% fewer calories from fat."

c. "Super Heated Cyclonic Air For 360° Air-crisp Circulation Perfect To Air Fry, Rotisserie & Dehydrate & More!"

213.    Likewise, the Air Fryer's packaging also boasts "5 Heating Elements" and that the "Powerful fan creates a whirlwind of super-heated air for even cooking." It also states the Air Fryers have the following features:

a. "1500 WAATTS [sic] OF POWER;"

b. "COOKS FOOD 360º EVENLY FOR DELICIOUS, TASTY MEALS;"

c. "EXTRA-LARGE CAPACITY—LARGE ENOUGH TO COOK A 12" PIZZA OR A 10-LB ROASTED CHICKEN;"

d. TRUE AIR FRYER PERFORMANCE WITH SUPER-HEATED AIR TECHNOLOGY;" and

e. AUTOMATIC SHUT-OFF TIMER."

---

[46] https://www.amazon.com/Emeril-Lagasse-Power-360-Convection/dp/B07NLHMYH4 (Tristar's official "From the manufacturer" Air Fryer page).

214. However, the Air Fryers are unable to comply with any of these representations regarding these benefits and characteristics because they fail and are unsafe to use.

215. In particular, the excessive heating elements are highly problematic and present a serious safety issue because, during regular and intended cooking, the excessive number of heating elements coupled with the fan's failure to properly circulate the hot air, allows the Air Fryers to reach temperatures up to 537°C (1000°F). This is particularly dangerous as the spontaneous ignition temperature and the fire point are reached when temperature is increased to about 310-360°C.

216. Indeed, Defendant concealed knowledge of this information from Plaintiff Simmons and California Class Members.

217. Defendant further violated the CLRA when it advertised the Air Fryers with the intent not to sell it as advertised and knew that the Air Fryers was not as represented.

218. Defendant's deceptive practices were specifically designed to induce Plaintiff Simmons and California Class Members to purchase or otherwise acquire the Air Fryers.

219. Despite these representations, Defendant omitted and concealed information and material facts from Plaintiff Simmons and California Class Members.

220.   In her purchase of the Air Fryers, Plaintiff Simmons and California Class Members relied on Defendant's representations and omissions of material facts.

221.   These business practices are misleading and/or likely to mislead consumers and should be enjoined.

222.   On July 26, 2021, Plaintiff Simmons provided written notice to Defendant via certified mail through the United States Postal Service demanding corrective actions pursuant to the CLRA, however, Defendant denied any allegations that the Air Fryers were defective.

223.   In accordance with California Civil Code § 1780(a), Plaintiff Simmons and the California Class Members seek injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing its deceptive advertising and sales practices.

224.   Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiff and California Class Members seek an order enjoining Defendant from the unlawful practices described above, a declaration that Defendant's conduct violates the Consumer Legal Remedies Act, money damages, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

## SIXTH CAUSE OF ACTION
### Violations of the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

225.   Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

226.   Plaintiff Simmons brings this count on behalf of herself and the California Class.

227.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

228.   Plaintiff Simmons and California Class Members who purchased the Defendant's Air Fryers suffered an injury by virtue of buying products in which Defendant misrepresented and/or omitted the Air Fryers's true quality and safety. Had Plaintiff Simmons and California Class Members known that Defendant materially misrepresented the Air Fryers and/or omitted material information regarding its Air Fryers and its safety, they would not have purchased the Air Fryers.

229.   Defendant's conduct, as alleged herein, violates the laws and public policies of the state of California and the federal government, as set out in the preceding paragraphs of this complaint.

230.   There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise its Air Fryers.

231.   Plaintiff Simmons and California Class Members who purchased Defendant's Air Fryers had no way of reasonably knowing that the Air Fryers was deceptively packaged, marketed, advertised, and labeled; was not safe; and was unsuitable for its intended use. Thus, Plaintiff Simmons and California Class Members could not have reasonably avoided the harm they suffered.

232.   Specifically, Defendant marketed, labeled, and represented the Air Fryers were safe for consumers, UL compliant, or maintains "seamless air-flower with powerful, even heat," and is unable to be "use(d) every day."

233.   Additionally, Tristar relies heavily on just how fast its Air Fryers cook given the added heating elements and air circulation design, and largely bases representations regarding quality on those features. In fact, it represents:[47]

a.   "The Secret Is The 5 Heating Elements With 360° Air Flow Technology"

b.   "The 360° Quick Cook Turbo Heat Technology cooks food in a whirlwind of super-heated air for up to 70% fewer calories from fat."

c.   "Super Heated Cyclonic Air For 360° Air-crisp Circulation Perfect To Air Fry, Rotisserie & Dehydrate & More!"

234.   Likewise, the Air Fryer's packaging also boasts "5 Heating Elements" and that the "Powerful fan creates a whirlwind of super-heated air for even cooking." It also states the Air Fryers have the following features:

a.   "1500 WAATTS [sic] OF POWER;"

b.   "COOKS FOOD 360º EVENLY FOR DELICIOUS, TASTY MEALS;"

c.   "EXTRA-LARGE CAPACITY—LARGE ENOUGH TO COOK A 12" PIZZA OR A 10-LB ROASTED CHICKEN;"

d.   TRUE AIR FRYER PERFORMANCE WITH SUPER-HEATED AIR TECHNOLOGY;" and

---

[47] https://www.amazon.com/Emeril-Lagasse-Power-360-Convection/dp/B07NLHMYH4 (Tristar's official "From the manufacturer" Air Fryer page).

e. AUTOMATIC SHUT-OFF TIMER."

235. However, the Air Fryers are unable to comply with any of these representations regarding these benefits and characteristics because they fail and are unsafe to use.

236. In particular, the excessive heating elements are highly problematic and present a serious safety issue because, during regular and intended cooking, the excessive number of heating elements coupled with the fan's failure to properly circulate the hot air, allows the Air Fryers to reach temperatures up to 537°C (1000°F). This is particularly dangerous as the spontaneous ignition temperature and the fire point are reached when temperature is increased to about 310-360°C.

237. Further, Tristar makes further misrepresentations to consumers during warranty calls in an effort to deceive them, including that the Air Fryers are not defective, that fixes such as unplugging the Air Fryer while in use will repair the issue, and that the incident being described is anomalous.

238. The gravity of harm suffered by Plaintiff Simmons and California Class Members who purchased the Air Fryers outweighs any legitimate justification, motive, or reason for packaging, marketing, advertising, and/or labeling the Air Fryers in a deceptive and misleading manner.

239. Accordingly, Defendant's actions are immoral, unethical, unscrupulous, and offend the established public policies of the state of California

and the federal government. Defendant's actions are substantially injurious to Plaintiff Simmons and California Class Members.

240.  The above acts of Defendant in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiff Simmons and California Class Members, were and are likely to deceive reasonable consumers by obfuscating the true nature of Defendant's Air Fryers, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

241.  As a result of Defendant's unlawful, unfair and fraudulent acts and practices, Plaintiff Simmons, on behalf of herself and the California Class, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

## SEVENTH CAUSE OF ACTION
### Violation of the California False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (Plaintiff Individually and on Behalf of all Class Members)

242.  Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

243.  Plaintiff Simmons brings this count on behalf of herself and the California Class.

244.   The conduct described herein took place within the state of California and constitutes deceptive or false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

245.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

246.   It is also unlawful under the FAL to make or disseminate any advertisement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

247.   Defendant, when it marketed, advertised, and sold the Air Fryers, misrepresented to Plaintiff Simmons and California Class Members that the Air Fryers were safe for consumers, UL compliant, or maintains "seamless air-flower with powerful, even heat," and is unable to be "use(d) every day."

248.   Additionally, Tristar relies heavily on just how fast its Air Fryers cook given the added heating elements and air circulation design, and largely bases representations regarding quality on those features. In fact, it represents:[48]

---

[48] https://www.amazon.com/Emeril-Lagasse-Power-360-Convection/dp/B07NLHMYH4 (Tristar's official "From the manufacturer" Air Fryer page).

a. "The Secret Is The 5 Heating Elements With 360° Air Flow Technology"

b. "The 360° Quick Cook Turbo Heat Technology cooks food in a whirlwind of super-heated air for up to 70% fewer calories from fat."

c. "Super Heated Cyclonic Air For 360° Air-crisp Circulation Perfect To Air Fry, Rotisserie & Dehydrate & More!"

249.    Likewise, the Air Fryer's packaging also boasts "5 Heating Elements" and that the "Powerful fan creates a whirlwind of super-heated air for even cooking." It also states the Air Fryers have the following features:

a. "1500 WAATTS [sic] OF POWER;"

b. "COOKS FOOD 360º EVENLY FOR DELICIOUS, TASTY MEALS;"

c. "EXTRA-LARGE CAPACITY—LARGE ENOUGH TO COOK A 12" PIZZA OR A 10-LB ROASTED CHICKEN;"

d. TRUE AIR FRYER PERFORMANCE WITH SUPER-HEATED AIR TECHNOLOGY;" and

e. AUTOMATIC SHUT-OFF TIMER."

250.    However, the Air Fryers are unable to comply with any of these representations regarding these benefits and characteristics because they fail and are unsafe to use.

251.    In particular, the excessive heating elements are highly problematic and present a serious safety issue because, during regular and intended cooking, the excessive number of heating elements coupled with the fan's failure to properly circulate the hot air, allows the Air Fryers to reach temperatures up to 537°C

(1000ºF).  This is particularly dangerous as the spontaneous ignition temperature and the fire point are reached when temperature is increased to about 310-360°C.

252.   At the time of its misrepresentations, Defendant was either aware that the Air Fryers were defective and not safe, or it was aware that it lacked the information and/or knowledge required to make such a representation truthfully.

253.   Defendant concealed, omitted, or otherwise failed to disclose this information to Plaintiff Simmons and California Class Members during purchase of the Air Fryers, after purchase when it discovered the safety Defect, or during warranty calls.

254.   Defendant's descriptions of the Air Fryers were false, misleading, and likely to deceive Plaintiff Simmons and other reasonable consumers.

255.   Defendant's conduct therefore constitutes deceptive or misleading advertising under the FAL.

256.   Plaintiff Simmons has standing to pursue claims under the FAL as she reviewed and relied on Defendant's television advertisement, packaging, advertising, representations, and marketing materials regarding the Air Fryers when selecting and purchasing the Air Fryers.

257.   In reliance on the statements made in Defendant's advertising and marketing materials, and Defendant's omissions and concealment of material facts regarding the quality and use of the Air Fryers, Plaintiff Simmons and the California Class Members purchased the Air Fryers.

258.    Had Defendant disclosed the true nature of the Air Fryers, specifically, the presence of a safety Defect, Plaintiff Simmons and California Class Members would not have purchased the Air Fryers or would have paid substantially less for it.

259.    As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Simmons and California Class Members who paid for the Air Fryers containing a safety Defect.

260.    Plaintiff Simmons and California Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant by means of its deceptive or misleading representations, including monies already obtained from Plaintiff Simmons and California Class Members as provided for by the Cal. Bus. & Prof. Code § 17500.

## EIGHTH CAUSE OF ACTION
## NEGLIGENCE
### (Plaintiff Individually and on Behalf of all Class Members)

261.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

262.    Tristar has a duty to exercise reasonable care in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Air Fryers that Tristar places into the stream of commerce, including a duty to assure that the product will perform as intended and will not cause damage as described herein.

263.   Tristar breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Air Fryers that Tristar placed into the stream of commerce in that Tristar knew or should have known that the product was defective, did not function as intended, and/or created a high risk of unreasonable, dangerous, foreseeable consequences.

264.   The negligence of Tristar, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

a.   designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Air Fryers without thoroughly testing it;

b.   negligently failing to adequately and correctly warn Plaintiff, Class Members, and the public, of the risks, potential damage, and dangers of premature failure of Tristar's Air Fryers;

c.   negligently failing to recall or otherwise notify users at the earliest date that it became known that the Air Fryers was, in fact, defective and would prematurely fail;

d.   negligently advertising and recommending the use of the Air Fryers without sufficient knowledge as to its manufacturing Defect and premature failure;

e.   negligently representing that Tristar's Air Fryers were suitable for its intended purpose when, in fact, the Defect will render the Air Fryer unable to safely and reliably cook food;

f.   negligently designing and processing the Air Fryers in a manner that would prematurely fail; and

g.   in other such ways that may be proven at trial.

265.   Tristar was negligent in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Tristar's Air Fryers in that they:

   a.   failed to use due care in designing and manufacturing the Air Fryers so as to avoid the premature failure when the Air Fryers was used for its intended purpose;

   b.   failing to conduct adequate testing to determine the useful life of the Air Fryers;

   c.   failing to conduct adequate testing to determine whether the Air Fryers contained a serious safety Defect;

   d.   failing to warn Plaintiff, prior to actively encouraging the purchase of the Air Fryers either directly or indirectly, orally or in writing, about the defective and unsafe nature of the product; and

   e.   in other such ways that may be proven at trial.

266.   Upon information and belief, despite the fact that Tristar knew or should have known that the Air Fryers were defective and would prematurely fail, Tristar continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Air Fryers to Plaintiff, Class Members, and/or the consuming public.

267.   Tristar knew or should have known that consumers such as Plaintiff and Class Members would foreseeably suffer damage to the Air Fryers and Plaintiff's and Class Members' property as a result of Tristar's acts and omissions, as well as failure to exercise ordinary care, as well as Tristar's negligent design and manufacture of the Air Fryers, as set forth herein.

268.   Tristar's negligence was the proximate cause of Plaintiff's and Class Members' damages to the product, damages to personal property, potential personal injury, as well as economic loss, which they suffered and will continue to suffer.

269.   By reason of the foregoing, Plaintiff and Class Members experienced and/or are at risk of premature failure of the Air Fryers, and personal injury and/or property damage.

270.   Had Plaintiff, Class Members, and the consuming public known that the Air Fryers were defective or would cause damage, they would not have purchased the Air Fryers or would have paid less for them.

271.   As a direct and proximate result of Tristar's misconduct, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
**(Plaintiff Individually and on Behalf of all Class Members)**

272.   Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

273.   Tristar knew or should have known that the Air Fryers were defective in design and manufacture, not fit for its ordinary and intended use, posed a danger of personal injury and property damage, and failed to perform in accordance with advertisements, marketing materials and warranties disseminated by Tristar, and with the reasonable expectations of ordinary consumers.

274.   Tristar fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that the Air Fryers are defective, would prematurely fail, and posed a safety hazard.

275.   Tristar had exclusive knowledge of the defective nature of the Air Fryers at the time of sale and at all other relevant times. The Defect is latent and not something that Plaintiff or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

276.   Tristar had the capacity to, and did, deceive Plaintiff and Class Members into believing that they were purchasing Air Fryers.

277.   Tristar undertook active and ongoing steps to conceal the Defect. Plaintiff is not aware of anything in Tristar's advertising, publicity, or marketing materials that disclosed the truth about the Defect, despite Tristar's awareness of the problem.

278.   The facts concealed and/or not disclosed by Tristar to Plaintiff and Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Air Fryers.

279.   Tristar intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class to act thereon.

280.   Plaintiff and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Air Fryers.

281.   Plaintiff and Class Members suffered a loss of money in an amount to be proven at trial, *inter alia*, as a result of Tristar's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Air Fryers on the same terms if the true facts concerning the defective Air Fryers had been known; (b) they would not have paid a price premium for the Air Fryers if they knew of the safety Defect and that the Air Fryers were likely to fail prematurely, overheat, smoke, and catch fire; and (c) the Air Fryers did not perform as promised.

282.   Had Plaintiff, Class Members, and the consuming public known that the Air Fryers were defective or would cause damage, they would not have purchased the Air Fryers or would have paid less for them.

283.   By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer damage and injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

C. Grant restitution to Plaintiff and the Classes and require Tristar to disgorge its ill-gotten gains;

D. Permanently enjoin Tristar from engaging in the wrongful and unlawful conduct alleged herein;

E. Award Plaintiff and the Class Members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F. Award Plaintiff and the Class Members pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G. Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  November 12, 2021          Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

/s/ Alex R. Straus
Alex R. Straus (SBN 321366)
280 S. Beverly Drive, Penthouse
Los Angeles, CA 90212
T: (917) 471-1894
astraus@milberg.com

Harper T. Segui*
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
T: 919-600-5000
hsegui@milberg.com

CLASS ACTION COMPLAINT
72

Rachel Soffin*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rsoffin@milberg.com

Erin Ruben*
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com

*Application to be admitted pro hac vice is forthcoming